ULPIANO VÉLEZ, ETC., FÉLIX MANUEL BOU, demandantes y recurridos, *v.* HALCO SALES, INC., e INSURANCE COMPANY OF NORTH AMERICA, demandadas y recurrente la primera; GLENWALL DE PUERTO RICO, INC., y AETNA INSURANCE COMPANY, terceras demandadas recurridas.

*Número:* R-67-357      *Resuelto:* 18 de junio de 1969

*Juan Enrique Géigel, Guillermo Silva, Hernán G. Pesquera, Miguel A. Giménez Muñoz* y *Ernesto Rodríguez Font,* abogados de Insurance Company of North America; *Rivera Zayas, Rivera Cestero & Rúa* y *Rodolfo Cruz Contreras,* abogados de Glenwall de P.R., Inc., y Aetna Insurance Company.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Torres Rigual.

El Juez Asociado Señor Santana Becerra emitió la opinión del Tribunal.

Ulpiano Vélez, en su carácter de Administrador del Fondo del Seguro del Estado y para beneficio del obrero Félix Manuel Bou, radicó demanda en la Sala de San Juan del Tribunal Superior contra Halco Sales, Inc., y su aseguradora Insurance Co. of North America. Alegó que el 17 de octubre de 1963 y en un condominio en construcción, en ocasión en que el obrero Félix Manuel Bou bajaba en un *winche* el aparato sufrió un desperfecto mecánico por lo cual se precipitó de considerable altura hasta su base. Como consecuencia del accidente el obrero sufrió lesiones que lo dejaron incapacitado. Que el Administrador del Fondo del Seguro del Estado incurrió en gastos por $9,200.45 como accidente del trabajo compensable. Alegó que el accidente se debió a la única y exclusiva culpa y negligencia de la demandada Halco Sales, Inc., al no mantener dicho *winche* en condiciones propias para el uso a que se estaba destinando. Reclamó daños en la cantidad de $109,200.45 y el derecho del Fondo a resarcirse de los gastos mencionados de $9,200.45.

La codemandada Compañía aseguradora negó los hechos de la demanda. A la vez interpuso demanda de tercero contra Glenwall de Puerto Rico, Inc., como tercera demandada. Alegó que si bien para la fecha del accidente el referido artefacto *winche* era propiedad de su asegurada Halco Sales, Inc.,

en ese entonces estaba en poder de la tercera demandada Glenwall bajo un contrato de arrendamiento; y que en virtud de dicho contrato, la tercera demandada asumió responsabilidad plena y total por cualesquiera reclamaciones de daños y perjuicios que surgiesen como resultado del uso o posesión del referido equipo. Alegó que por razón de dicho contrato la tercera demandada podía serle responsable a la codemandada por la totalidad o por parte de cualquier suma de dinero que ella tuviera que satisfacer al demandante en sentencia que se dictara en este caso a favor de dicho demandante.

Como tercera demandada, Glenwall de Puerto Rico, Inc., compareció y pidió la desestimación de la demanda de tercero. En 2 de noviembre de 1967 el tribunal de instancia dictó la siguiente sentencia:

"SENTENCIA—Examinadas las contestaciones al requerimiento de admisiones que sometió la tercera demandada Glenwall de P.R., Inc., y Aetna Insurance Company al tercero demandante Halco Sales, Inc. e Insurance Company of North America, y examinadas las sentencias del Tribunal Supremo de Puerto Rico en los casos de Núñez Méndez vs. Autoridad de las Fuentes Fluviales, sentencia de 16 de febrero de 1966, y Marcano vs. Autoridad de las Fuentes Fluviales, sentencia de 20 de enero de 1965, se desestima la demanda de tercero. Regístrese y notifíquese."

Para revisar el anterior fallo expedimos este recurso.

■ El Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de abril 18, 1935, dispone que en aquellos casos en que la lesión, enfermedad o muerte que dan derecho a compensar al obrero, empleado o sus beneficiarios, bajo las disposiciones de dicha Ley, le hubieren provenido en circunstancias en que hiciera responsable a tercero de tal lesión, enfermedad o muerte, el obrero o empleado o sus beneficiarios podrán reclamar y obtener daños del tercero responsable de dicha lesión, enfermedad o muerte. Este artículo subroga al Fondo del Seguro del Estado en los derechos del obrero o empleado o de sus beneficiarios en esos casos, y

el Fondo puede entablar acción a nombre del obrero o empleado o de sus beneficiarios contra dicho tercero causante del daño.

Ésta es la acción subrogatoria y para beneficio del obrero, que se ha traído en este caso. Como complemento del Art. 31 antes referido, la propia Ley dispone en su Art. 20 que cuando el patrono asegura sus obreros y empleados de acuerdo con dicha Ley, el derecho establecido en la misma para obtener compensación *"será el único remedio en contra del patrono"*.

Surge del récord que el accidente ocurrió mientras el obrero trabajaba para la tercera demandada Glenwall como patrono. La situación es aquella típica que hemos tenido ante nuestra consideración en una serie de casos y que fue analizada no hace mucho en *Cortijo Walker* v. *Fuentes Fluviales*, 91 D.P.R. 574 (1965). Exponiendo por voz del Tribunal esa situación, dijimos en el caso de *Cortijo*:

"Bajo el régimen de nuestro estatuto de Compensaciones por Accidentes del Trabajo, está aquí decidido que el obrero o empleado lesionado o sus beneficiarios, no pueden exigir resarcimiento al patrono bajo las normas de responsabilidad del derecho común, en nuestro caso, del Código Civil. La compensación que da el estatuto es el único resarcimiento del obrero o sus beneficiarios en cuanto a su patrono, siempre que el caso esté dentro del ámbito de la Ley. *De Jesús* v. *Osorio*, 65 D.P.R. 640, 642 (1946); *Onna* v. *The Texas Co.*, 64 D.P.R. 520, 524 (1945); *Rivera* v. *Comisión Industrial*, 67 D.P.R. 561, 563 (1947); *Fonseca* v. *Prann*, 282 F.2d 153, 157, *cert.* denegado, 365 U.S. 860. Y véase: cuando el estatuto de compensación no cubre el caso: *Arroyo* v. *Plaza Provision Co.*, 68 D.P.R. 962, 965 (1948).

Ante la histórica experiencia de la cuesta-arriba azarosa del obrero para obtener resarcimiento en accidentes del trabajo, cuando para ello debía probar convincentemente actos de negligencia del patrono o de otro compañero de labor y estaba sujeto a la vez a la imputación de su propia negligencia o descuido como defensa del patrono, situación histórica esa que tantas veces dejó al obrero o a sus familiares en el desamparo, el Legislador optó aquí por un sistema integrado sobre la base de una responsa-

bilidad objetiva social en esta esfera de relación del trabajador y su patrono. Pudo ser a costa de someter al obrero o sus familiares en relación con el patrono, al resarcimiento módico de una compensación estatutaria y en torno sólo a un criterio de dependencia, en comparación al resarcimiento mayor y de relación más amplia bajo las normas generales del Derecho civil; y de privarlos de esto último. El Legislador hizo su selección entre factores de conveniencia y aplicó un sistema social integrado de responsabilidad objetiva. La inmunidad que ha concedido al patrono contra otras acciones o remedios—Art. 20—en los casos cubiertos por el estatuto, debió ser esencial al sistema de responsabilidad objetiva implantado, como un medio de alentar el que todo patrono se asegure, sin lo cual el sistema no podría ser efectivo.

Este criterio legislativo de conceder inmunidad al patrono contra remedios fuera de la compensación se pronuncia aun más al adoptarse en 1935 el estatuto vigente. Bajo la legislación de 1928—Ley Núm. 85—que fue sustituida por la actual, existía igual disposición—Sec. 33—declarando la compensación estatutaria el único remedio contra un patrono que aseguraba a sus obreros. No obstante esa disposición, la propia Ley Núm. 85 en su Sec. 44 concedía una acción de daños a favor del obrero o sus herederos contra un patrono cuando las lesiones se debían al acto ilegal o *negligencia* criminal de su patrono, permitiéndole en tal caso al obrero o sus herederos renunciar a los beneficios del estatuto. De manera similar, la Sec. 45 permitía a la Comisión Industrial subrogarse en el derecho del obrero o sus herederos y obtener daños contra *un patrono* responsable de la lesión en el caso de acto ilegal o *negligencia* criminal del patrono. Esas disposiciones del estatuto anterior se descartaron desde el 1935 al adoptarse la ley actual, lo cual demuestra un señalado y definitivo criterio del Legislador de no conceder acción general de daños por concepto alguno contra el patrono cualquiera que fueren sus actuaciones en la esfera aquiliana y el grado de culpa o negligencia, con excepción de aquellas situaciones del Art. 15—patrono no asegurado—en que concediéndose al obrero o sus familiares los beneficios de la Ley, se les permite demandar al patrono en daños como una sanción adicional al incumplimiento de no asegurarse. Éste es el único caso.

.    .    .    .    .    .    .    .

Los beneficiarios del obrero han demandado a la Autoridad recurrente y alegan que su negligencia causó la muerte. La recurrente trae a responder al patrono como tercero demandado invocando su alegada negligencia, y pide que sea éste quien indemnice a los demandantes. En la alternativa, lo cual equivaldría a lo mismo, que satisfaga a la recurrente el todo o parte de lo que ésta viniera obligada a pagar a los demandantes. Se pone al patrono asegurado en la posición de afrontar y de tener que defenderse de una reclamación de daños por la muerte de un obrero suyo en el curso del trabajo, a base de su negligencia.

Bajo disposiciones estatutarias como el Art. 20, es improcedente en derecho una demanda de tercero contra el patrono en las circunstancias del récord—patrono asegurado y el accidente cubierto por el estatuto de compensaciones—lo mismo bajo la teoría de la 'contribución', en que un co-causante del daño vendría obligado a responder a otro co-causante, como bajo la teoría del derecho de un demandado en daños a ser 'indemnizado' por un tercero demandado en relación con los hechos. La inmensa mayoría de los tribunales han sostenido la improcedencia de tal demanda de tercero contra el patrono, en los lugares donde existe una disposición de remedio exclusivo como la de nuestro estatuto. . . ."

Al igual que en el presente recurso, en el de *Cortijo* se trajo a un tercero demandado para responder de la reclamación, tercero demandado que, como en este caso también, resultaba ser el propio patrono. Con relación particularmente a ese tercero demandado que resultaba ser el propio patrono, expresamos más adelante:

"Aparte del concepto depurado, hay un fundamento más simple de llano sentido común, también tomado en cuenta. Permitir la demanda de tercero equivaldría a que se hiciera de manera indirecta lo que directamente el Legislador ha vedado que se haga. Sería traer a consideración la negligencia del patrono por la puerta trasera de una demanda de tercero, y hacerlo responsable en daños por tal negligencia."

Posteriormente, en *Vda. de Andino* v. *A.F.F.*, 93 D.P.R. 170 (1966), si bien no presentaba el caso de un tercero demandado, por determinarse que existía un grado de culpa

concurrente del empleado del patrono y de la cual no debía responder la allí demandada Fuentes Fluviales, fue preciso repetir:

"En este caso hubo culpa del patrono del obrero como principal por la negligencia de su otro empleado, el conductor del camión. La muerte fue un accidente del trabajo. Bajo el régimen de la Ley de Compensaciones por Accidentes del Trabajo su patrono asegurado no le responde al obrero por el accidente, aunque medie negligencia. Art. 20, Ley Núm. 45 de 18 de abril de 1935. Véase *Cortijo Walker* v. *Fuentes Fluviales*, 91 D.P.R. 574 (1964). No podía ser aquí el patrono un codemandado directo, ni respondería de manera indirecta como un tercero demandado, ni podría la demandada resarcirse luego del patrono como un colaborador con ella del daño. La inmunidad contra responsabilidad en daños de un patrono *asegurado*, por su culpa, es absoluta bajo el plan integral de funcionamiento de la ley que provee compensación por el accidente del trabajo."

Tanto el caso de *Cortijo* como el de *Vda. de Andino*, antes citados, se resolvieron a la luz del concepto de responsabilidad o culpa aquiliana del patrono. En otras palabras, a base de la negligencia del patrono *ex-delicto* por acción u omisión interviniendo culpa o negligencia, considerando también, en esta esfera, las teorías relacionadas de "indemnización" y de "distribución". 91 D.P.R. a las págs. 582 y ss.

■ El actual recurso nos presenta el problema de hacer valer una reclamación de tipo *ex-contractu* contra el patrono, por otra persona que no es el obrero. Cf. Opiniones concurrentes en *Marcano Torres* v. *Fuentes Fluviales*, publicadas en 91 D.P.R. 655 y ss. (1965).

De los autos aparece que entre la demanda Halco Sales, Inc., y la tercera demandada Glenwall, se suscribió un contrato fechado en 26 de julio de 1963 en que Glenwall se obligó como arrendadora del equipo a mantenerlo en condiciones de seguridad en su funcionamiento; asumió toda la responsabilidad por razón de reclamaciones de cualquier persona, que surgieran de la mantenencia, uso y posesión de

dicho equipo, y se comprometió a descargar a la demandada Halco de la responsabilidad que tuviera por razón de tales reclamaciones. [1]

Incuestionablemente la demanda de tercero en este caso va dirigida a hacer valer dichas cláusulas contractuales. Aun cuando se interpretara que al convenir la tercera demandada Glenwall con la codemandada Halco el asumir toda responsabilidad por reclamaciones de cualquier persona que surgieran de la mantenencia, uso y posesión del equipo excluye la responsabilidad de Glenwall como patrono hacia su propio empleado a la luz de las normas de la Ley, todavía Glenwall fue más allá y convino *inter alia* en descargar a Halco o hacerse cargo de cualquier responsabilidad que Halco tuviera por los conceptos expresados.

En las circunstancias dichas, sostener el derecho de la codemandada Halco o de su compañía aseguradora a exigir de Glenwall por vía de una demanda de tercero, y en cumplimiento de un contrato, resarcimiento de aquello que Halco viniera obligada a satisfacer al demandante Fondo del Seguro del Estado y al obrero como consecuencia del accidente ocurrido, no es contrario, ni a la norma sentada en *Cortijo* y otras decisiones nuestras, ni a la política pública envuelta en la Ley de Compensaciones por Accidentes del Trabajo en cuanto a la inmunidad que dicha Ley ofrece a un patrono asegurado causante del daño de su empleado, contra acciones de éste en la esfera *cuasi-delictual* de la culpa o negligencia.

La inmunidad induce a que los patronos se aseguren, y exista un sistema integrado de compensación sobre bases de responsabilidad objetiva, con o sin culpa.

Si conociendo el estado de la ley y la inmunidad que le protege un patrono en su libertad de contratación opta por

---

[1] En el texto en que se contrató:

"The Lessee/Buyer *assumes all responsibility* for claims asserted by any person whatever growing out of the erection and maintenance, use or possession of said equipment *and agrees to hold Halco harmless from all such claims.*"

asumir en cuanto a terceros que podrían ser culpables del accidente, una obligación, ello en nada afecta la política pública ni el plan integrado de compensaciones a obreros, siempre que, en cuanto al obrero y el Fondo se refiere, se cumplan las disposiciones de la ley, que no pueden ser modificadas o alteradas contractualmente.

En las circunstancias de este caso, Halco y su aseguradora deberán responder siempre y directamente, no importa la existencia de la demanda de tercero, al Fondo demandante y al obrero, si se probare que por su culpa o negligencia fue el tercero que causó el accidente.—Art. 31 Ley.

Lo que Halco pretende hacer valer con la demanda de tercero es su derecho a que, si se dicta sentencia contra ella a favor del Fondo y del obrero, Glenwall cumpla la obligación contractual de indemnizarla por lo que tuviere que pagar. El que se declarase en su día con lugar la demanda de tercero no afectaría en nada la obligación de Halco de indemnizar al obrero y al Fondo de condenársele por sentencia como causante del accidente por su culpa o negligencia.

A base de los anteriores supuestos de ley que deben regir, el permitir la demanda de tercero en este caso no se aparta de las normas de *Cortijo* y otras decisiones, ni se aparta de las normas de la ley especial que rige. Concebimos que de haber Halco indemnizado al demandante si se le condenara a ello, nada impediría que interpusiera un pleito para resarcirse de Glenwall bajo los pactos contractuales convenidos. El que lo haga a través de una demanda de tercero en el pleito, no altera la situación sustantiva que rige entre las partes, ni altera o afecta la posición del Fondo y el obrero demandante bajo el Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo.

*Se revocará la sentencia anteriormente transcrita y se devolverán los autos para procedimientos ulteriores compatibles con lo aquí dictaminado.*